UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 08-11021-RGS

STEPHEN J. GOODMAN

v.

DAVID E. BELFORT, ESQ.

ORDER ON PLAINTIFF'S CHAPTER 93A CLAIM

September 20, 2010

STEARNS, D.J.

On August 5, 2010, a jury returned a verdict rejecting Stephen Goodman's legal malpractice claim against his former attorney, David E. Belfort, Esq. In addition, the jury awarded Belfort $34,190.36 in unpaid legal fees. Following the verdict, the court instructed counsel to submit memoranda on the issue of Goodman's untried claim against Belfort of violations of Mass. Gen. Laws ch. 93A (Chapter 93A, the Unfair Business Practices Act).

Goodman first argues that Belfort is liable under Chapter 93A because he committed an assault and battery on Goodman when he forcibly touched Goodman on the chest for five to ten seconds during the course of a dispute over fees in Belfort's office.[1] Belfort denies any forcible touching of Goodman. Assuming, *arguendo*, that the facts as asserted by Goodman are true and that there can be recovery for a tort of this kind under Chapter 93A, his claim fails because he did not include this allegation in the required Chapter 93A demand letter. The written demand for relief is a prerequisite to suit under Chapter 93A. Lingis v. Waisbren, 75 Mass. App. Ct. 464, 468 (2009). There is no right to relief for

---

[1] Goodman alleges that he suffered stress and emotional harm as a result of the alleged assault and battery.

conduct not recited in the demand letter.  See Bressel v. Jolicoeur, 34 Mass. App. Ct. 205, 211 (1993).  More important is Goodman's own statement, in a letter of complaint sent to the Cambridge Police Department three days after the alleged incident, notifying the police of Belfort's conduct but stating that "[n]o damage or injury occurred . . . .  At this time, [I am] not planning any legal action."  Trial Ex. 129.

Next, Goodman argues that Belfort misrepresented his qualifications when at the inception of the representation he told Goodman that he was a "trial litigator."  According to Goodman, Belfort had at that time in fact participated in "very few" civil jury trials. Goodman additionally argues that Belfort concealed from him the fact that he was using law students to do legal research.  Goodman states that he learned of this only when he received a telephone call from one of the student assistants with a question about the case. The court finds that Belfort made no misrepresentations regarding the fact that he was a trial litigator - as Goodman himself states, Belfort had participated in several civil jury trials. Moreover, there is no evidence that Belfort affirmatively concealed the fact that he used law students to assist in legal research; first, Goodman admits to being on notice of this fact. Moreover, it is a common practice for law offices to hire law students as employees or interns to conduct legal research.

Goodman points next to Trial Exhibit 139, an email from Belfort to an employee, stating, "Welcome to the world of Mr. Goodman," and "[t]ake EVERYTHING he says with a huge grain of salt – remember he's learning disabled."  Goodman argues that these comments reveal that Belfort was dishonest and deceitful when he led Goodman to believe that he was committed to zealous advocacy on Goodman's behalf.  Belfort argues that "[s]uccessor or alternate counsel to Belfort would have either won the [underlying] case or

persuaded Goodman to dismiss the case, in either instance negating the incurrence and payment of the costs and appellate obligations." Goodman's Mem. at 7. Goodman also highlights Trial Exhibit 102, an email from Belfort to Goodman outlining MSL's settlement offer on the eve of trial. According to the email, MSL offered to allow Goodman to take a two credit Composition course at another school, which would count for six credits at MSL. In the alternative, Goodman could take the course at MSL as many times as necessary to earn a passing grade, with extra time and free tutors provided, and to have his grade guaranteed to be the average grade if he put a good-faith effort into the essays. (Goodman notes that he doubts the integrity of the exhibit, suggesting that Belfort in some way fabricated the exhibit. Goodman implausibly denies having ever received the "alleged" settlement offer.)

Goodman testified that had the offer been made, he "might have accepted" it. Goodman's Mem. at 9. Goodman additionally argues that had the offer been real, he "could have been dissuaded from pursuing the legal malpractice suit [against Belfort] and thereby saving himself in excess of $50,000 in additional legal fees and expenses." Id. Finally, Goodman calls into question Belfort's time billing practices, arguing that he was overbilled in the approximate amount of $66,000.

While the court believes that Belfort's unsuccessful attempt at humor in his email to an employee did not reflect good judgment on his part, there is no evidence in the record that Belfort was anything less than zealous in trying to achieve a beneficial outcome for Goodman, who by all accounts was a difficult client. The record underscores Belfort's tireless effort to obtain reasonable settlement offers for Goodman, as well persistent attempts on Belfort's part to convince Goodman to accept the offers and avoid the risk of

losing everything at trial.[2]  Goodman made an informed choice to litigate the underlying state court action and the instant matter, and resisted to the bitter end his counsel's advice to consider the likelihood that the litigation would fail.  That he would seek now to lay the blame for his mistaken choices at Belfort's feet is perhaps best understood as confirmation of the adage that no good deed goes unpunished.

### ORDER

For the foregoing reasons, the court will DISMISS Goodman's Chapter 93A claim against Belfort with prejudice.  The Clerk will enter judgment for Belfort on all counts and close the case.

SO ORDERED

/s/ Richard G. Stearns

UNITED STATES DISTRICT JUDGE

---

[2] The court credits Belfort's version of the story - that he communicated the generous settlement offer to Goodman on the eve of trial.